A. L. NOLTA, Appellant, v. FRANK S. LANDER, Administrator, Appellee.

**BILLS AND NOTES: Actions—Evidence of Ownership.** The introduc-
1   tion in evidence by the payee-holder of a promissory note makes a prima-facie showing of right of recovery.

**BILLS AND NOTES: Construction and Operation—Contemporaneous
2   Written Contract.** An ordinary promissory note must, between the original parties thereto, be construed in the light of a contemporaneous written agreement which makes reference to the note as a part thereof. So held where the two instruments were construed as an agency contract, with liability on the note limited to the amount of goods sold by the maker thereof.

**BILLS AND NOTES: Holdership in Due Course—Undisclosed Principal
3   as Indorsee.** An indorsee of a negotiable promissory note has no basis for a claim of holdership in due course when he was the sole owner of the note from its inception, and simply took under an indorsement by his own agent, to whom the note had been made payable.

Headnote 1:  8 C. J. p. 1004.  **Headnote 2:**  8 C. J. p. 196.  **Headnote 3:**  8 C. J. p. 523.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

MAY 12, 1925.

REHEARING DENIED OCTOBER 2, 1925.

CLAIM in probate against the estate of Lawrence T. Johnson, deceased, on a promissory note for $1,628.34. The opinion

states the facts. The court directed a verdict in favor of the claimant for $75.11, and entered judgment thereon. Claimant appeals.—*Affirmed.*

*E. N. Farber* and *H. C. Lounsberry,* for appellant.

*C. H. Van Law* and *F. M. Haradon,* for appellee.

DE GRAFF, J.—Plaintiff seeks to establish a claim in probate against the estate of Lawrence T. Johnson, deceased, and predicates his action on a promissory note. It is conceded that, on October 26, 1920, the decedent executed and delivered his negotiable promissory note in the sum of $1,500 to the Patterson Stock Remedy Company. Shortly thereafter, the note was transferred to the claimant, A. L. Nolta. The note was not paid at maturity, and a renewal note was executed by Johnson to Nolta in the sum of $1,628.34, payable on or before November 19, 1922. Johnson died, and the renewal note was filed as a claim against his estate.

The primary allegation in the answer of the defendant-administrator is that the original note was executed by the decedent under a contemporaneous written contract with the Patterson Company to sell certain stock remedy manufactured by the said company, and that the same was to be shipped to Johnson as needed to fill orders with his customers. It is further pleaded that there was a failure of consideration of the original note.

Plaintiff in reply denied the allegations of the answer, and alleged that he is a holder in due course. On the trial, plaintiff offered and introduced the note in evidence, and rested. This was his privilege and right. He was in possession, as payee and holder, of a promissory note executed by the decedent, and this constituted sufficient evidence of title to make a prima-facie case.

1. BILLS AND NOTES: actions: evidence of ownership.

To avoid judgment, the defendant was compelled to assume the defensive, and prove the issue tendered, to wit: a failure of consideration. At the close of all the testimony, both claimant and defendant moved for a directed verdict. The trial court in effect overruled both motions, and directed a verdict in favor of the claimant in the sum of $75.11. To understand this ruling

and to determine the correctness thereof, it is necessary to study the facts and circumstances surrounding the inception of the original note and the conditions of its transfer to the claimant Nolta.

The record discloses that the Patterson Stock Remedy Company (trade name used by F. W. Patterson) was engaged in the business of manufacturing and selling stock remedies. Nolta had been an agent of the company, and prior to the Johnson transaction, had purchased and paid for $3,000 worth of the Patterson powders. He was unable to handle this amount of product, and requested Patterson to sell a part of it to someone, in which attempt the latter was successful. That ''someone'' was Johnson, to whom he sold on contract 100 sacks, in the value of $1,500, as evidenced by the original note. On this phase of the transaction Patterson testified:

2. BILLS AND NOTES: construction and operation: contemporaneous written contract.

''I turned the settlement to Mr. Nolta, and was going to ship the goods to Mr. Johnson, in place of sending to Mr. Nolta. I did not refund any cash, and the $1,500 note was the only payment made him for the 100 bags of stock food. The goods were sold at the same price per pound.''

It thus appears that 100 sacks of the stock remedy which had never been delivered to Nolta by Patterson were, at the request of Nolta, resold by Patterson to Johnson, but without knowledge on the part of the latter that he was buying from Patterson as the agent of Nolta. Contemporaneously with the delivery of the note, there was executed a written contract between Patterson and Johnson. This contract was on a printed form, and, according to Patterson, the contract ''was to show what his [Johnson's] territory was, and that he bought so much goods to get a certain territory to sell in.''

It became necessary for the trial court to construe the terms of the written contract, but without having the contract introduced in evidence. Patterson was unable to produce it, and he was the only living witness that ever saw it. His recollection of its contents is not altogether certain. He testified that, in making the deal with Johnson, the latter gave a ''straight order and the note,'' and that the contract referred to the note. He further testified that the stock food was to be shipped to the

customers of Johnson as shipments were ordered, and the latter was to make settlement with his customers. Johnson's profit, as disclosed by the orders, was $1.00 per hundred pounds sold. As a matter of fact, but three orders with directions for shipment were filed by Johnson with the Patterson Company, amounting to about $60; and it was this amount, with interest, that the court allowed the claimant to recover.

The primary question then is: Did Johnson enter into a contract absolute in its terms for the purchase of $1,500 worth of stock remedy, as evidenced by the note, or was the contract a mere agency agreement, whereby Johnson undertook to sell the remedy for and on behalf of the Patterson Company? The trial court construed the contract and note as one instrument, for the purpose of showing the true intent of the parties thereto, and held that the note, although absolute in form, was, in legal effect, payable on condition, which was contained in a separate contract, but referable thereto. In this holding we concur. The note was executed in conjunction with an agency contract. We entertain no doubt that the contract had to do with territory and price of the goods to be delivered to Johnson as a sales agent, and as such agent he was accountable to the principal for the sales made by him.

Patterson testified that nothing prevented Johnson "from getting the balance, except that he did not order it out;" and from this item of evidence appellant contends that the nonperformance of the contract resulted from the act of the obligor, without the concurrence or delinquency of the obligee, who would have performed his undertaking if he had not been prevented by the act of the obligor. Further, that neither law nor equity will exonerate the obligor from the payment of the note, or any part of it, merely in consequence of nonperformance by the obligee, when he was ready and willing to perform, and was prevented by the voluntary act of the obligor. 3 Ruling Case Law 947, Section 142; 1 Elliott on Contracts 444, Section 254. There can be no quarrel with this legal principle. The trouble is that Johnson was under no legal obligation, under his sales contract, "to order it out." He became liable for the sales he made as agent, and his failure "to order" did not make him a delinquent obligor.

We now pass to the *bona fides* of the transaction. Is Nolta in a position to assert that he is a holder in due course? It is clear that Nolta knew the method adopted and used by the Patterson Stock Remedy Company in the sale of its products. He had been the sales agent of Patterson in the vicinity of State Center, Iowa, and concerning him Patterson testified:

3. BILLS AND NOTES: holder-ship in due course: undisclosed principal as indorsee.

"Mr. Nolta bought the goods of us and sold them in State Center, just like Mr. Johnson in his territory."

Aside from all this, it is clearly shown that Patterson was the agent of Nolta, acting upon the request of the latter in disposing of an undelivered order for which Nolta had fully paid Patterson, as testified by both of these parties. Although Patterson treated the transaction with Johnson as the act of the Patterson Stock Remedy Company, and drafted the contract accordingly, in truth and in fact Patterson was simply using his good offices to assist Nolta in unloading, and to recover what had been paid in advance by Nolta to Patterson. The Johnson note was made payable to Patterson, although the latter was not entitled thereto. Patterson was selling nothing in this instance, and there is no testimony from which an inference could be drawn that Patterson was buying back the stock remedy or canceling the Nolta order with intent to refund the money paid. Had the true situation been respected by Patterson, the note would have been made payable to Nolta in the first place. He did indorse to Nolta without recourse, in an apparent attempt to relieve himself, as far as possible, from legal liability on his indorsement. Viewing Nolta as the real vendor of rights to undelivered property, the trial court properly refused to entertain the doctrine of holder in due course. Knowledge or notice of Patterson, the agent of Nolta in the premises, must be imputed to Nolta, and he is bound thereby. The contract between Patterson and Johnson created certain rights and obligations. Nolta's rights can rise no higher. The judgment of the trial court must be, and is,—*Affirmed.*

FAVILLE, C. J., and STEVENS and VERMILION, JJ., concur.